Our last argument of the term is in Case 10-568, Nevada Comm'n on Ethics v. Carrigan. Mr. Elwood. Mr. Chief Justice, and may it please the Court, neutral laws requiring official recusal for conflict of interest do not abridge free speech because a legislator's vote, however expressive, is not protective speech. It is, rather, a legally binding exercise of state power that he wields as an incident of public office. The Nevada Supreme Court concluded that Responda did have a free speech right to vote, and that overrode the Nevada recusal statute. For four reasons, that holding was error. First, since the earliest days of the Republic, recusal rules have been understood to serve important interests unrelated to any views a legislator may want to express by requiring disqualification when circumstances indicate that private interests may have affected his independence of judgment. Kennedy The case is presented to us with briefs that seem to pass in the night. Your emphasis is on whether or not there's a right to vote that's protected under the First Amendment, and which is what the Nevada court held, and you're quite correct to address it. But the Respondent says, well, this interest has a chilling effect on protected speech. I think we have to reach both parts of that argument. Do you agree with that? Roberts I think that the Court could simply address what the Nevada Supreme Court did and tell it whether it got it right or got it wrong, whether there's a speech interest, and whether that is subject to strict scrutiny or not. But I think that even though that argument I don't think was raised or passed on below, that the Court would have discretion to address that, and I think it would give additional guidance to the Nevada Supreme Court. Kennedy Well, if we say that intermediate scrutiny is the test, even under that test, certainly under that test, that regulation cannot chill speech any more than necessary to fulfill the governmental interest, even under the intermediate standard. And it seems to me it's difficult for us just to address the standard of proof without deciding the case. Maybe you're right. Maybe we can just answer the question that was certified and send it back if you prevail. I'm not sure. Roberts I think you're right, Justice Kennedy, that it would provide more guidance to the Nevada Supreme Court. It would be a pretty narrow reversal and remand, assuming that the Court merely reached a speech question. But on the associational question, I think it's important to emphasize from the outset that I think this would have a negligible effect on association because it simply would not apply all that frequently. In order for the recusal statute to apply, two circumstances have to be simultaneously met. First, there has to be a qualifying relationship, which is close and ongoing. And simultaneously, it must have the — it must, on the third party, must have a private, usually pecuniary interest before that same legislator. Ginsburg As I understand the objection, it's not to recusal rules in general, but it's to the vagueness of this particular one. As I understand it, there's no concern about the specific categories that were mentioned, like family member or employer. Roberts That is correct. Ginsburg So we're dealing not with can you have recusal rules. Everybody agrees yes, you can. It's the degree of specificity. Roberts Well, that was the basis of the holding of the Nevada Supreme Court was that those implicated speech rights, and all of them would be subject to strict scrutiny. So from the outset, we may all be agreed that the court below applied fundamentally too high a level of scrutiny. Kennedy But the objection to a statute on the grounds that it's vague doesn't go away simply because intermediate scrutiny applies, is it, assuming intermediate scrutiny? Roberts No. But I think that the — our response to the vagueness argument is that Respondent concedes that the four categories for members of your household, relatives, employers, and business relationships are clear. He says that on page 2 of his brief. So the question is whether the substantially similar language gums up the works, essentially. Now, substantially similar is a statutory phrase that has had to have been used by every State legislator in the country and by Congress. Ginsburg But not in this context. I mean, you don't disagree that — I forgot which brief told us that no State has a similar catch-all. Roberts Well, first, I would disagree with the characterization of it as a catch-all, because it only sweeps in relationships that are substantially similar. But Seattle, for example, has a — what is a true catch-all, which sweeps in — it applies whenever it could appear to a reasonable person having knowledge of the relevant circumstances that the covered individual's judgment is impaired because of either a personal or business relationship not covered under Subsection A or B or above, which lists the covered relationships, or a transaction or activity engaged by the covered individual. So while Nevada may be the only statute that applies the substantially similar to these four categories, it is not alone in that structure. And I think more importantly, it is not anywhere close to alone in its breadth. The New Jersey statute is, I think, if anything broader, a direct or indirect financial or personal involvement. And there are numerous State statutes which apply to business associates. Alito Well, I found this statute very difficult to understand. But maybe you can explain what's — what I found a bit puzzling. The statute talks about a commitment in a private capacity to the interests of others. Now, I take it that that commitment doesn't have to be something contractual. When you're talking about relatives, that would assume — that that would include emotional commitments to the relatives who were listed. Is that correct? I think it would include the same things that are covered by ordinary — every other refusal statute, which is very close personal relationships and relationships that give rise to a financial interest for the public official. And we're not talking about — Not a financial interest of the public official. A financial interest of the relative or the person who is substantially similar to a relative. Or is that wrong? Well, I think that in the case of the relative, yes, it's the financial interest of the relative. And that's why the very close personal relationship. But all of the other relationships for members of the household who are presumably part of the same economic unit and for employers in whom the officer has a — obviously a very close financial interest and they're tied together. And for business relationships, all of those are to get at the financial interest of the officer, not of the third party. Well, maybe if I give you an example, you — it would — it'll be clearer. Let's take somebody who is within the third degree of consequentity. So that would include second cousins? Yes. Okay. Now, let's say a public officer is considering something that would affect everybody's property taxes in town or a measure that would affect the benefits or the wages of everybody who works for the town. And this official has a second cousin who — whose property taxes would be affected or works for the town and the second cousin's wages or benefits would be affected. Now, would that person have to recuse? I think that the — it would depend on a couple of things. First of all, it is a covered relationship. The second cousin would be a covered relationship. And I — and the — I think the interest there is — I think would be, you know, the subject of some debate whether it is a private interest because it is a broadly shared interest. But I suppose because his property taxes might increase, it would be a private interest. There is still the question of whether a reasonable person in those circumstances would view his — his — his judgment, his independence of judgment — it would be difficult to figure out whether a reasonable person would think that an effect on my second cousin's property taxes would require — would materially affect my judgment. But it's even worse than that because of the substantially similar. So the public officer not only has to think about second cousins, the person has to think about everybody who is like a second cousin to him or her. I have no idea how you — how you go about that. Well, the way that that has been defined — and this appears — this is not just a Nevada Commission on Ethics interpretation. This is what the legislature understood it to mean if you look at the legislative history when they added the statute in 1999. What they were looking for by adding the substantially similar relationships were relationships that were substantially similar to household and substantially similar to family. And what is at issue there is not that, you know, the fact that you have a genetic similarity makes you more likely to see things their way, but that families are presumed to be among your closest relationships. Suppose that you spent your life in the civil rights movement or the right to bear arms movement or one of the other sides of the abortion debate. And these are your acquaintances. This has been one of your principal activities, not for pay, but just because of your civic commitment. And then you were elected to the legislature under this Nevada statute that controls. Must you recuse whenever an officer of that association has — is paid? No, Your Honor, because to begin with, a personal relationship only covers the very closest personal relationships. So your most intimate and closest relationships on earth would be covered. They have coffee together every morning and they're in the same book club. And even that, Justice Kennedy, applies with extraordinary rareness. The last case that I'm aware of where personal interests alone justified recusal was in 1999 before this statute was amended. Mr. Elwood, for me at least, we've jumped way ahead. I'm not so much concerned about the vagueness as I am about the proposition that ethical rules adopted by legislatures for voting are subject to review by this Court or by any court under the First Amendment. This is the first case I'm aware of that we've ever had which makes such an allegation or I'm not even aware of any other case in 220 years in Federal courts. And it's certainly not because legislative rules have not been vague. The First Congress adopted a rule that, quote, no member shall vote on any question in the event of which he is immediately and particularly interested. I don't consider that very precise. And the rules adopted by Thomas Jefferson for the Senate where the private interests of a member are concerned in a bill or question, he is to withdraw. The private interests, what does that mean? And where such an interest has appeared, his voice is disallowed even after a division. Now, that's been around in our Congress forever. But our Constitution provides that the rules of the legislature are to be determined by Congress and not by this Court. And I am sure we would not review those rules. Now, is there a contradiction between leaving those rules to the Congress and the First Amendment? Do you really think that the two are set in opposition to each other? Certainly, Justice Scalia, I would not think so. And this is the first case that I'm aware of. It's the first time anyone has said it, to my knowledge. I don't even know of law review articles that said it before basically the decision that is under review for neutral laws of general applicability. But to return to Justice Kennedy's question, what this law is doing is that it's I agree emphatically with Justice Scalia. Except that I could never put it in the Constitution. Scalia. But you are ending up skirmishing on what seems to me a less significant aspect of this case. This case is enormously important on that major question. I'm not inclined to resolve it on the question, well, you know, this is too vague. I mean, it's even vaguer than what the first Congress adopted. It seems to me that just opens the door to future litigation, challenging ethical rules, which does not make me happy. It is true. And in addition to that, to expand it even more, apply it even more broadly, with the exception of essentially the D.C. Circuit's opinion in Clark v. United States, this is the first opinion I'm aware of where anyone has even held that there is a First Amendment interest in any sort of expressive official action. You modified your answer to Justice Scalia by saying you're not aware of any case that applied the First Amendment to rules of general — neutral rules of general applicability, I think. But if the First Amendment doesn't apply, that doesn't matter, does it? You can't limit your — the type of rules that you say are not — are okay and are not if the First Amendment doesn't apply at all. I'm not sure I understand your question, Justice, but I think that — Well, if the First Amendment doesn't apply to this type of activity, then you would have no First Amendment objection to biased rules of specific applicability. Oh, absolutely. We would, because I think R.A.V. v. City of St. Paul clearly indicates that even that speech that is subject to prescription can't be regulated in a viewpoint-based manner. I thought your position was that this wasn't speech protected by the First Amendment. But even speech that is not protected by the First Amendment, such as fighting words in R.A.V., can't be regulated in a viewpoint-based manner. If someone can challenge one of these rules on the ground that it's not neutral, that it applies in a disproportionate way to particular members of the Legislature. I think they could challenge it in a way — alleging that it is viewpoint-based if it were only applied to Democrats or Republicans. But I don't think that if it were an otherwise normally applicable rule that it would be subject to challenge on that basis. I'm not sure why you should concede even that, Mr. Elwood. I agree. If this is just conduct, if this is not prescribable speech of the kind that R.A.V. was talking about, why should we care about the, you know, viewpoint-based doctrine that's arisen in First Amendment law? Well, in any event, Justice Kagan, that is how I interpret R.A.V., that it would not be an available option to have a viewpoint-based recusal statute that affected things differently depending on viewpoint. Do you think that the rules in the House of Representatives allocating time on the floor or committee membership are neutral? They're biased in favor of whichever party happens to be in the majority. They are — I think that they're — I think that they're neutrally applicable. I don't know that they would — I don't — I am not aware of them applying different amounts of time to a majority and minority members. I may be incorrect about that. Well, and if they did, we would review it. I think that any time you're talking about — I mean, depending on what the House is, there's an extra measure of deference when you're applying to, obviously, to Houses of Congress. Isn't that nice? But the cases come up here anyway, right? They certainly do come. Look, fighting words are words. They are speech. There's no doubt that they're speech. And it's a considerable question whether the vote of a legislature is speech for purposes of the First — is speech at all, not whether it's a fighting speech or something else. Whether it's speech, it's a vote. But in any event, all the Court even needs to get to is whether laws of neutral applicability would be covered. But this statute doesn't. That's all this statute is. This statute doesn't apply just to voting. It says that the public officer shall not vote upon or advocate the passage or failure of the message. But that is essentially. Advocating the passage or failure of the message is surely speech in the ordinary understanding of the concept, isn't it? So that is to essentially complete the disqualification just as under Thomas Jefferson's recusal rule. When you were disqualified under Jefferson's rule, you were out of it. You couldn't essentially function as a legislator. And that's all that attempts to do. It hasn't been applied to Mr. Kerr again. It doesn't apply to outside advocacy. It just applies to advocacy within the legislature. Absolutely. It does not apply to advocacy as a citizen. But even if you have a law which is not directed to speech and is directed at conduct which is not speech, that law is still, correct me if I'm wrong, even under intermediate scrutiny, subject to invalidation if it has a chilling effect on speech as an incidental matter, if that chilling effect is more than is necessary to accomplish the purpose of the statute. Isn't that correct? If it is reviewed, I mean, it depends on the test you use. We don't think that O'Brien, which is a test that some of the amici have proposed, is an appropriate standard. Because even O'Brien is talking about laws that have a much greater effect on expression. Because after all, burning a draft card, one of the main reasons you'd want to do that is an expressive reason. Whereas these really are laws that have nothing to do with what views people think you're going to be expressing. And we think that a closer analogy are cases like Burdick, where there are laws of neutral applicability that States use to regulate their processes of self-government. And those, unless they have a severe burden on association, have been subject to review for reasonableness under Burdick and Timmons and that entire line of cases. We think that furnishes a much more appropriate analogy for this case. Breyer. The statute says, or advocate the passage of. So I guess that's speech. But, Justice Breyer. I mean, the basic question is, again, do you agree with Justice Scalia's question, the point of it, or don't you? If it doesn't apply, if voting is not speech, then no matter how outrageous the law or rule, it doesn't fall within the First Amendment. And if it is speech, then you get into some of the questions that were raised, is this too vague or is it not? So which is it? Justice Breyer, I don't think we have to get as far as the position that Justice Kagan was suggesting, that I think Justice Scalia is suggesting, because we're willing to abide by RAB and require neutrality in the regulations of this. I think that we might have to write an opinion, irrespective, which says either it is speech or not. And so that's why we're asking the question, to get your opinion, which is an informed opinion, about how we should write that paragraph. Do we say that voting is within the First Amendment scope, or do we say it is not? I think you would say that it is not. In that case, the most outrageous law you can think of in respect to voting is not covered by the First Amendment. Justice Breyer, we again are willing to abide off. We are willing to abide by RAB. No, I'm not. We're willing to do. It can be a neutral restriction on voting, which is not itself. Mr. O'Connor, why is that extraordinary? Why aren't you willing to accept that? I mean, if the Speaker of the House counts the votes wrong, and he says the ayes have it, when it's obvious that the ayes don't have it, do we review that? I think that that represents. Is there any greater violation of the principles of democracy than counting the votes wrong in the legislature? Yet that matter is not reviewable here, is it? I don't believe so. So why is it extraordinary that this one should not be reviewable? Justice, I just think that there are certain things that you don't – there's a sort of principle when you're dealing with other branches of government that you don't look behind it when they certify things. This Court has held that in various contexts. And I don't think – you know, it may well be that that would support an even – a stronger rule than we are advocating. But, you know, all we are here to defend is a neutral law on the part of the State of Nevada. In several recent cases, the Court has taken pains to make the point that it is not going to recognize any new categories of unprotected speech. But the argument that you seem to be endorsing now in response to some questions is that there is this new category of unprotected speech, which is advocacy of the passage of legislation when a recusal statute comes into play. But I think that if there's any law that has a better claim to be added to that category, it's one that would be consistent with a law or a rule that was adopted by the first Congress seven days after they first achieved a quorum. I mean, those were the people who were the people who proposed and framed the First Amendment, and they never indicated that they thought any sort of personal First Amendment right was implicated by recusal rules, either by them or Thomas Jefferson's rule, which was not even a rule adopted by the whole House. Sotomayor, just to clarify this issue, because I don't know that I've heard you state it explicitly, the second part of this recusal statute that bars the advocacy of a measure in which there's an interest prohibited by the statute, it is your position that's advocacy in the legislative body. Absolutely. So it's only limited to getting up on the floor and talking about that. That's absolutely correct. We view it as basically completing the disqualification and saying you're just not you cannot act as a legislature in deciding whether this bill will be passed. That person can still go outside and give all the press releases they want. Absolutely. What do we do with cases like Miller v. Towne of Hull and Coulson v. Grohman that have recognized retaliation claims because of speeches given during the casting of a vote? Would those cases still be viable if we decide that there is no First Amendment right in voting? I think they would be viable under the way we are framing it, which is that basically if it's a law of general applicability that you could still bring a claim of retaliation, which those kind of claims are problematic for other reasons, because there's a lot of what would be called retaliation that is itself protected by the First Amendment. But if you're talking about an official who is a civil service employee, assuming you need to even get there because they have their own civil service rights to be there, they would still have the claim that it was based on viewpoint-based discrimination. And under the rule we are proposing, or the rule that we are willing to abide by, certainly, R.A.V. v. City of St. Paul would protect those people for a retaliation claim. Mr. Carrion, if we did not review any of these ethical rules applicable to a legislature, at least where the rule is adopted by the legislative body itself, as opposed to being imposed upon it by some other body, there is the protection that all of the legislators are subject to it. So if it's vague for Mr. Carrion in this case, it's vague for everybody else as well. That is true, Justice Scalia. So it's sort of a self-regulating mechanism. That's true. You have to be willing to abide by whatever vagueness and whatever ethical rules you've imposed on somebody else. That is true. And this law applied for the better part of 30 years. It applied to every legislator in the State of Nevada. In July of 2009, the State Supreme Court struck it down as applied to members of the legislature. But this was the rule they lived under. And they didn't think it was ambiguous. They didn't think that it chilled their associational rights. They seemed to think that it was just fine. I suppose you'd have a First Amendment claim under your theory if the generally applicable rule was applied in a discriminatory manner. It turned out, you go back and look, and over the last two years, the only people who have been sanctioned for violating the ethics rules have been members of the minority party. I think that that is another one of the sort of discriminatory enforcement claims are a whole other ball of wax. And, I mean, they're certainly, you know, very hard to prove, and they bring up all the strong issues about, you know, presumptive regularity and that people are acting in good faith. I don't know that that would be a First Amendment claim, but perhaps an equal protection claim. But it's certainly not presented here. There's never been any allegation that these laws have been enforced discriminatorily. In fact, arising from the same vote, the Nevada Commission on Ethics sanctioned an opponent of the Lazy Eight Casino because he had an undisclosed interest in a business interest in the Nugget, which was a political opponent of this. If I could reserve the remainder of my time for rebuttal. Thank you, Mr. Elwood. Mr. Rosenkranz. Thank you, Mr. Chief Justice, and may it please the Court. The core problem with this statute, which the Court has been grappling with, is this. An unelected commission has arrogated to itself essentially the right to invalidate an election result and to do it in a way that treats core political association as corrupting. If the police of political purity are going to tell an elected official that he cannot cast the vote that he ran on and was elected to cast, they have to do it clearly, they have to do it prospectively, and they have to do it for an important reason. So if the legislature adopts a rule that says from now on we're going to require a four-fifths majority for a bill to pass, that lowers the effectiveness of the speech of someone in the minority, and you can challenge that on First Amendment grounds? I think not, Your Honor, because that is a way of organizing the institution that applies equally to all members of the institution. So does this. Well, this will single out individuals at any particular moment in time who are specifically isolated and told that that particular individual cannot vote. How is that different from the minority people in the Chief Justices? It only affects them when they're in the minority. Well, yes, Your Honor, and I think. So it only affects somebody if they fall within the strictures of the statute. And my point is simply that this takes one particular legislator and says you can not vote, and those rules are completely fine in certain circumstances, but not when the effect is to tell someone that the rationale, the reason that you are being isolated is because you associated with someone politically who helped you win an election. Mr. Rosenkranz, you are not, is it right, that you are not challenging any part of the statute except the one that says substantially similar? The rest you have no constitutional objection to, is that right? That is correct, Justice Ginsburg, and more precisely, we are challenging the use of that substantially similar provision to expand the statute to relationships that bear no relation to the actual text of the statute. Mr. Rosenkranz, is the vote of a judge in a case like the vote of a legislator? Is that speech? Because judges are subject to ethical rules which prohibit their participating if there would be, quote, an appearance of impropriety. If there's anything vaguer than that, I can't imagine what it might be. Can I get out of all that stuff? Here's what you can get out of, Your Honor. You can get out of, for example, if you are, in addition to being a judge, a law professor at a State university, and that university fires you because of an opinion that you issued, that opinion is speech. That vote has speech aspects to it. Are you answering my question? I want to know whether I can get out of this appearance of impropriety stuff. The answer is no. Why? For two reasons. One is that judges are just plain different from legislators. Judges are supposed to bring no political loyalties at all to them when they are sitting on the bench. Legislators are actually not only allowed to, but expected to bring political loyalties when they are. What does that have to do with whether the First Amendment applies, with all of its prohibitions against vagueness? The answer again, Your Honor, is when it comes to judges, we tolerate quite a bit more by way of chill of a judge's vote precisely because judges are supposed to act judicial and purge their vote of all extraneous effects. Well, that's too bad, because I would have been much more attracted to your position. I understand, Your Honor. And, Mr. Rosenkranz, what about officials in the executive branch? When the Secretary of Defense gives a speech and the President doesn't like it and the President fires the Secretary of Defense, does the Secretary of Defense have a First Amendment action? The Secretary of Defense has a First Amendment argument. It would be a very weak one under this Court's opinion in Garcetti. But his First Amendment rights are implicated if it's a speech that he's giving not in the line of his duty. So all the official acts in the legislature, in the executive branch, you're somehow saying courts are different, so I guess we don't have to worry about that, but official acts across the government are now subject to First Amendment analysis? Absolutely not, Your Honor, and that was this Court's holding in Garcetti. And the reason this Court held that in Garcetti was that there the government is acting as employer. The government is entitled to discipline its own employees like any other employer can, but we all agree government as employer, that Pickering standard, doesn't really work in the context of regulation of political activity. What about the rules of civility in the houses of Congress? There's things that a member of the Senate, for example, cannot say about another senator, make a personal attack, that would be protected by the First Amendment if the senator stepped outside the door. Is there First Amendment protection for that? Do those rules have to pass First Amendment scrutiny? Within the chamber, Your Honor, no. It's just the chamber that's sanctioning someone, and the reason is those are Roberts' rules of order that apply to everyone and that order the debate. But I don't understand that. I mean, this rule applies to everyone, too. It might apply to one person on one vote and to another person on another vote, but everybody at every vote has to look at these ethical rules and decide whether they have to recuse themselves as a result. And so this is a rule, though, we have to go back to what its effect is outside the legislature. This is a rule that takes political associations and treats them as corrupting core political associations, volunteering of the sort. Would you think that if there were a statute, let's take out the vagueness aspect of this, if there were a statute that said you can't vote on anything where you have yourself some monetary gain attached to it, or if a very close family member, or if a close business associate, or campaign manager of your campaign, do you think that would be unconstitutional? It would not be vague, Your Honor, but it would be unconstitutional. Unless the State demonstrates why a campaign manager is corrupting. Because the State, what the State thinks is that a campaign manager is just like a business partner. And the answer to that is no. A volunteer campaign manager is not just like a business partner. There is no pecuniary gain to the candidate or the legislator as there is in a relationship with a business partner. There is personal political loyalty. That's what the Ethics Commission said was wrong. Ginsburg. I thought the only reason that we have this case is that the three-time campaign manager was, did have a financial stake in this vote because the project was approved? No, Your Honor. That's not why we're here. That's not why the commission said we were here in the first instance. The commission is now saying we're here because of that. But what the commission said was it's the closeness of this relationship without regard to the financial gain, which the commission accepted was zero for this particular lobbyist. Regardless of the financial gain, it's the political loyalty. This guy helped you win. Because he helped you win, you will be beholden to him and do him more favors. Well, lots of political activists help a candidate win. It seems to me that if you're going to make this argument, and this is the point we discussed with Mr. Elwood, there are two ways to do it. Number one, to say this infringes the right to vote, which is a First Amendment right, or you can say that this impinges unduly on necessary rights of association that preceded your election to the legislative post. It seems to me that the latter is the only way that you can make your case and to avoid the force of the argument the Petitioner made. Your Honor, it is certainly correct that the latter is far narrower. This is an outlier statute. No other legislature has ever adopted a statute that says campaign manager or political loyalty is corrupting. And so this Court could very easily say, look, this is just different from all of the other recusal statutes. It doesn't seem to be different from the ones that Mr. Elwood read to us. I think he read one from New Jersey. Your Honor, he cited one case from New Jersey. The statute does not refer to political loyalty. And in that case, it was a close friendship. And in the course of describing the close friendship, the Court, after listing multiple factors, said one of them was that they were both part of the same political club. They also vacationed together. That's a completely different application. No State and no commission, so far as we know from the briefs, there's no case cited  that the candidate is itself so corrupting that we have to disqualify the candidate from casting the vote that the vote that he ran on, that the voters elected him to cast. And if this is accepted, it places an impossible drag on the associational rights. The candidate will have to think twice before ever hiring or enlisting a volunteer who is a political activist. He will want to recruit the best, the most talented, the most savvy, but he will always have to ask himself, what will this person do three years from now that might disqualify me from embarking on my duty that I was elected to engage in? That's rather exaggerated. You have to worry he's going to buy a casino or something like that? No, Your Honor. Let me give you a concrete example from real life that happens all the time. If the NRA or NARAL decide that they believe strongly in a piece of legislation and they hire a lobbyist, so there's benefit to the lobbyist from this relationship and that lobbyist says, I, too, am on mission. I continually lose in the legislature because it hangs in the balance. I'm going to work for candidates who will tip the balance for me. The commission's opinion says that that lobbyist, because he's worked on that campaign and wins, will, by that very act, invalidate the vote of the legislator. That's just untenable, and there's no way to interpret the opinion that the commission actually wrote to make that anything other than the natural consequence of its opinion. And worse yet, from the allies. If that's what it means, you would think the legislature would change it, wouldn't you? I mean, that doesn't just hurt Mr. Carrigan. That, you know, that would be something every legislator would worry about. Oh, boy, we've got to change this. So why don't we let them change it? Yes, Your Honor. Yet the legislature comes in with an amicus brief to this Court and says that its interpretation of this statute is all it needs to have is a relationship that is analogous or parallel to those — this is on page 32 of their amicus brief — analogous or parallel, and they are defending the application of this statute to political loyalty. But let's look at the other side of the equation. That is, the Vasquez's of the world, the NRA advocate. On that side of the equation, anyone who deeply holds a view that's political — let's say it's Mr. Vasquez. He is pro-development. They will refrain from joining campaigns out of fear that when they join the campaign, they will get the campaign. Why is that? I mean, what the commission says is Mr. Vasquez has been a close personal friend, confidant, and political advisor throughout the years. So that doesn't sound like any volunteer. It sounds like somebody sitting on a case where his best friend is likely to gain millions of dollars. And that's what it seems when I read that opinion, that they're thinking all these things combined is what causes this to fall within the category of a reasonable person might have doubts about the independence of judgment. Your Honor, they gave a gestalt at the end. They lead with, instrumental in the success of all three of Councilman Kerrigan's campaigns. And they go through a long narrative about the political relationship. These were not— That's part of it. My basic question is, as you know, with judges, and I guess you have a very vague statute which was quoted to you, and what we have are subsidiary rules with ethics commissioners. I have in my office — they're not commissioners, they're committees of judges — and I have in my office seven volumes which I look at from when there's a question, as others do. And those seven volumes contain dozens of opinions of the committee trying to apply vague statutes and vague rules, not constitutionally vague, but general. So what's wrong with Nevada doing exactly the same thing here? Because the difference, Your Honor, is judges are— Oh, so you're saying that the difference is that we're judges. Yes. You mean a Congress and legislators and executive branch people couldn't have exactly the same system? Do they have general rules? It's called the common law system. The answer is no, not when it affects associational rights. So let me just dispute— Did you argue associational rights below? Oh, absolutely, Your Honor. And the— Why do you think the Court didn't address it? Because it relied on the First Amendment analysis? I don't know why the Court didn't address it. It was front and center. It was a section. It was called overbreadth. But for eight pages, from page 9 to page 18, there is extensive discussion that what they meant by overbreadth is this reaches too broad. This reaches relationships that should not be reached. It was not in the cert opposition, but it was front and center before the Nevada Supreme Court. Is there any catch-all that you would say would pass your constitutional test? You told us that the four specific categories, member of the household, employer, that those are all right because they're specific, but you don't like the substantially similar. Is there any catch-all that a legislature could adopt that would pass your view of what's constitutional? It's hard to imagine one. Let me just point out. It is very, very rare for a legislature to do anything other than what's in A through D. And the problem with this catch-all, which, by the way, is the term that was used by both courts below, the problem with this catch-all is perhaps the words are okay, maybe. I mean, I can imagine someone interpreting those words so narrowly that they're okay. But what this catch-all does is to add language to the original four criteria, so it's not just family members and business associates. It's now friends, close friends. Breyer, you were going to answer my question, which is since the judiciary uses what's called the common law method, why is it impermissible for the executive branch or the legislative branch also to use a common law case-by-case method of elucidating, through example, what a general provision means? The answer, Your Honor, is that the judiciary does not engage in political activity outside. So you're saying that one who engages has to use a definitive rule-based method rather than a common law method. So my question there would be, assuming your difference between the branches is right, still, why? And the answer is that the candidate and the volunteer have to know ex ante whether to engage in this relationship or not. But why do they have to know ex ante? There was an advisory process that was set up by the Nevada Commission here. And the entire — Mr. Harrigan chose not to use it, but he could have gone to the Commission, said, what do you think about this relationship? Does it fit or does it not fit? Your Honor, the advisory process, the problem with it is that it comes too late. The relationship was already in place. If you're going — if the — if the Commission is going to invalidate the result of an election where everyone is talking about this issue and everyone knows about this relationship, they've got to tell them before they're engaged in the relationship. Mr. Carrigan would have dropped Mr. Vasquez. Well, I mean, but that — but that's unworkable to say, you know, that every potential candidate, I think I might run for office next year, and so I'm going to get advice from some committee as to who I can associate with. I mean, that just is unworkable. My point exactly, Your Honor. You cannot — you don't know in advance because you can't know what's going to come out three years later. You can't know what conflicts will arise. And so you don't know in advance. You can't present the question to the — to the Commission. How would this— Counsel, we've kind of lost the thread of your argument. Is this a vagueness claim or a First Amendment claim? I gather your claim is going to be the same even if the statute clearly said family members, you know, business partners and political consultants. Correct, Your Honor. And it is both. There are basically two halves to it. One is even if the statute were perfectly clear, this is a relationship that the State is not allowed to view as toxic because it is not a toxic relationship in a democratic process. And secondly, this is also vague. So there was no notice up front as to the fact that the Commission would later invalidate the result of the election on this case. Is your vagueness argument — is that a First Amendment argument of its own? It is a baseline vagueness argument on due process grounds, but it gets elevated because of the First Amendment. So we can decide your vagueness. If we agree with you on vagueness, we don't have to determine whether the First Amendment applies in this type of situation? Oh, that is correct, Your Honor. Absolutely. In the Nevada court, you argued overbreadth. That was at least how the court understood your challenge. And here, overbreadth takes a back seat and vagueness is the principle on which you rely dominantly. So what accounts for the shift? You were arguing overbreadth before the Nevada Supreme Court. The answer, Your Honor, is that the Nevada Supreme Court shifted. So before the Nevada Supreme Court, everything was on the table. There was vagueness. There was overbreadth. There was extended relation — extending to a relationship that's First Amendment protected. The two key pieces, first was vagueness, and then second was this overbreadth argument, as I've described it, which really was about the protected relationship. The Nevada Supreme Court called it overbreadth, but if you look carefully at what it actually says, it is vagueness at every step of the way. It is talking about — this is on pages 14 to 15, on to 16 and 17. It is talking about the Constitution demanding a high level of protection. What's the standard for vagueness that we apply? We apply vagueness to First Amendment prohibitions or restrictions on speech. We apply vagueness to criminal statutes. This isn't a criminal statute. It does have a civil penalty. What is the case that I consult to see what standard of vagueness I apply? Gentile, Your Honor. Gentile is a case that is about sanctions. It's about sanctions for First Amendment protected activity. And the standard really is — I mean, it's articulated the same way in all these circumstances, but it really is, can a reasonably intelligent person know in advance that they are going to be sanctioned? Here we're talking about a penalty for participating. What if it's a disclosure rule, saying, you know, you can participate, you can vote, you can advocate. You just have to disclose interests of this sort. Is that problematic under the law? Not at all, Your Honor. That's perfectly appropriate. That is, in fact, what Mr. Kerrigan did right at the outset. Why? Doesn't that burden his First Amendment rights? A lot, yes, but a lot less so. And this Court is very comfortable with disclosure when you're talking about public officials as lighter medicine, less severe medicine than an outright ban or a punishment for that association. That's the way it should work in the political process. Everyone in this election was aware of Vasquez's role. It was front-page news when the hearing was going on. And so for a commission — Why? If the relationship wasn't particularly special, no more special than any other political volunteer, why did that become front-page news? Oh, it — And if your client didn't have a suspicion that he was on the edge of the law, why did he bother going to the city attorney to get an opinion? Because as he testified and the commission did not disagree, this guy is a Boy Scout, Your Honor. He does everything to avoid any appearance of impropriety. And he said, I did that because I just wanted to make sure. I am not a lawyer. And the city attorney, of course, gave an opinion that gave him a clean bill of health, said, yes, go forth and do this. Now, if the lawyer doesn't know and the commissioners can't settle on which of these things the relationship is most similar to and the district court can't choose one, how is it possible for someone in Mr. Kerrigan's position to know ex ante? How will we ever write — how will the Congress ever write a law that would be so clear that clients would never have to go to lawyers or that lawyers couldn't disagree about? We would have to invalidate virtually every law as vague. Less so in the First Amendment — I mean, more so in the First Amendment context. In all the other contexts, the standards are likened — But you're not denying that most laws would be vague. Yes, Your Honor. Under that definition, that lawyers disagree on the conclusion of what the law means. And there is a big difference between ambiguity of particular words and what the commission did here, which was to say, we see these four categories. We are not applying any of these four categories. We're saying — we're extracting a principle. It's a principle of closeness. Now, close enough for government work when it comes to relationships that are First Amendment protected just isn't good enough when it — when you're talking about that context. So I did want to talk just for a moment about the degree of burden that we're talking about here, because the commission seems to be saying, no big deal, this is just a disqualification provision. It's not actually a burden at all. Now, I think we all agree that if the State of Nevada declared that anyone who's a campaign manager can never lobby the legislature, that would be unconstitutional, and they'll fine them for it. Or that strict scrutiny would also apply if the State passed a law fining a candidate for choosing a campaign manager who lobbies the legislature. Kagan I'm not sure I understand that, Mr. Rosengrantz. There are many laws out there that say that people who serve in certain government capacities, when they leave those jobs, can't lobby for a certain number of years. How is that any different? Rosengrantz It would be subject to scrutiny for sure. It would be subject to First Amendment scrutiny, and that would be justified on the ground not of the closeness of relationships that are formed, but on the ground that you don't want legislators here and now, as they are sitting in the chamber, thinking about generating business with their future clients and changing their votes because of that. That's the justification. But there's no such justification here. The Commission has never articulated why political loyalty is so toxic that it needs to be banished from politics. And so, just on the directness of the burden yet, for a political activist who is engaged in these sorts of relationships, the burden of being told, you've got to choose right at the outset, are you going to represent, are you going to help this candidate get elected, or are you going to lobby, that is worse than a fine, because a political activist wants to do both precisely because they care about the ultimate results. And for the candidate himself, who is deciding right up front which of the universe of players am I going to take as volunteers, they need to know up front whether this relationship will be viewed as toxic, and if it is, they will not engage in that relationship. This is no less direct than the burden that this Court recognized as unconstitutional in the Davis case, the Millionaire Amendment case, or in Burdick, where the only burden was that the paid petitioner would have to register to vote, which is a nominal burden, but those whose consciences were affected by a registration were kept out of the process. If there are no further questions, I respectfully request that the Court affirm the judgment. Thank you. Thank you, Counsel. Mr. Elwood, you have five minutes remaining. Thank you. Now, my colleague argues that the Nevada recusal statute targets political association, and that is simply not the case. Nothing in the statute about politics. Mr. Kerrigan was recused because he had a business relationship with Mr. Vasquez. Wholly apart from the personal relationship and the fact that he was the three-time campaign manager, he was also the firm, the campaign's main outside vendor. And 89 percent of the Kerrigan campaign expenditures were paid through his advertising firm. That is, looks at all levels of ordinary business relationship. I think his argument is that the ethics commission, at least in part, relied upon the fact that he was the campaign manager. And he is saying, I think, as I understand it, or at least I'd have this question, that an ethics commission cannot disqualify a legislator on the ground, even in part, that an individual had a political association with him previously. I think that — May be a new argument in this Court. I don't know. I think that the fact that this happened to be a political relationship was incidental. If Mr. Kerrigan — Mr. Vasquez does two things. He's a campaign manager. He's a developer. He assists in development. If Mr. Kerrigan had exactly the same relationship, but had just been working with him on the development side, it would have been exactly the same situation. If he had helped him with past projects. Is that a new argument in this Court, as I stated it to you? I don't believe so. They've made — They made that argument below. Right. What we have here — I don't know if they used the term that it was incidental, but I mean, if you look at the opinion at pages 105 to 106 of the Pet App, it's clear that they're looking at the business relationship. It's relevant, certainly, to help them win three elections, because that's relevant to the closeness of their personal relationship. I think Justice Breyer's question, if he can tell me if I'm wrong, is whether that I'm sorry. Whether that associational right with the political — My understanding, the way I view the briefs, is that there were two references to an associational right in the briefs. In the opening brief before the Supreme Court, I think it's page 918, and it was in the context of making a vagueness argument. I looked through it. You can look through it and see what you think, but I did not see that as an argument that this is burdening our associational rights. But I think — Vasquez had been the campaign manager in the past, and he was a great campaign manager, and perhaps Cargan would like him to be his campaign manager in the future. Would there be a problem then? I think that — I think probably not, because if the question is whether it burdens association so much that it's chilling. And I mean, basically, I think that's an empirical question. And because you have to have a particular interest, a private interest, in order to be recused, I think that it wouldn't arise so frequently that it would be a problem. But I think more fundamentally here, or at least for purpose of this case, because it comes here, or at least a respondent says this is an as-a-plan challenge. What we have here is a relationship that was front-page news, because this isn't just some plain vanilla campaign volunteer. This is somebody with whom he has a very intimate business relationship that involved this expenditure of $46,000. And I think another thing that is worth noting is that in 10 years on the books, this law has never been applied to campaign volunteers. It's — in order — campaign volunteers specifically come up in the legislative history of the 99 Act. And they say they would not, without more, be covered, because what this covers is the same types of relationships that every other recusal statute covers, very close personal relationships and relationships that give rise to a financial interest in the public official. Well, suppose somebody had made extensive independent expenditures in support of the public officer's prior campaign, and the public officer may hope that similar expenditures will be made in the future. Would that be a basis? I don't think it would be a basis under the Nevada law. The Nevada law, because it's not a — it's not a personal relationship. It's not household. It's not relative. It's not employer. And it's not a business relationship. Is there a way to get advice? I think you said when he went to the county attorney, he could have gone to the Ethics Commission, and then were told if Ethics Commissions can give advice only after the person is in office, they don't give — they're not obliged to give advice to candidates. So when Karagan is running, then apparently he has no access to the Ethics Commission? I think that that's right. The Ethics Commission only has authority to give opinions to sitting candidates. Are there no further questions? Thank you, counsel. The case is submitted.